**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



Russ Kendig
United States Bankruptcy Judge

Dated: 03:24 PM February 8, 2019

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | MISC. PRO. 19-00101 |
| | ) | |
| TOLLNG OF DEADLINES | ) | JUDGE RUSS KENDIG |
| DURING LAPSE OF | ) | |
| APPROPRIATIONS | ) | **MEMORANDUM OF OPINION** |
| | ) | **(NOT FOR PUBLICATION)** |

     On January 28, 2019, the United States Attorney's Office, on behalf of the United States of America ("United States") filed a motion "requesting a tolling of all deadlines applicable to the United States, its agencies, or its employees, including, without limitation, a tolling of all bar dates for the filing of proofs of claim and requests for the payment of administrative expenses with respect to the United States and its agencies from December 22, 2018 through January 28, 2019 (the "Appropriations Lapse")." The United States alleges that during the recent government shutdown, certain agencies furloughed workers and were unable to file claims. Now that work resumed, the government is concerned with the backlog of work and asks the court to toll all deadlines during the shutdown and extend those deadlines for the period of the shutdown, thirty-six (36) days. For the reasons contained herein, the motion is **DENIED.**

     The court has subject matter jurisdiction of this proceeding under 28 U.S.C. § 1334 and the general order of reference entered by The United States District Court for the Northern District of Ohio on April 4, 2012. Gen. Order 2012-7. The court has authority to issue final orders in this matter. Pursuant to 11 U.S.C. § 1409, venue in this court is proper. The following constitutes the court's findings of fact and conclusions of law under Bankruptcy Rule

1

7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

The United States cites no legal authority for the broad relief requested.

## I.     Proof of claim bar dates

Governmental and nongovernmental creditors are treated differently under the bankruptcy rules. The United States is a governmental unit as defined in the Bankruptcy Code. *See* 11 U.S.C. § 101(27). Governmental units have the benefit of a longer claims bar date. Generally, a governmental unit's claim is due one hundred and eighty (180) days after the order for relief. Fed. R. Bankr. P. 3002(c)(1). This period well exceeds the general seventy (70) day period for nongovernmental claimants. Fed. R. Bankr. P. 3002(c).

The Bankruptcy Rules also provide a governmental creditor benefits in extending the deadline that are not available to nongovernmental creditors. When a request to extend a governmental unit's bar date is timely filed, the length of the extension is left to the discretion of the court and is not constrained to specific fact patterns but is based on a showing of cause. Fed. R. Bankr. P. 3002(c)(1). To be timely filed, the motion must be "made before expiration of the period for filing a timely proof of claim." Id. With nongovernmental creditors, the extension is limited to sixty (60) days from the date the motion to extend is filed and bound to two situations involving insufficient notice. Fed. R. Bankr. P. 3002(c)(6).[1] The Bankruptcy Rules limit the enlargement of time for any creditor file claims to the extent and under the conditions stated in Rule 3002(c). Fed. R. Bankr. P. 9006(b)(3).

The United States filed a blanket motion to toll deadlines. There are likely cases in which the deadline expired and cases where it is yet unexpired. The issue is that the former leaves the government in an untenable position because the request for an extension is untimely. The Bankruptcy Rules clearly require the government to file a motion to extend before termination of the claims bar date. The court is constrained to follow the Bankruptcy Code and Rules. Bankruptcy Rule 9029 provides that "[a] judge may regulate practice in any manner consistent with federal law, these rules, Official Forms, and local rules of the district." Fed. R. Bankr. P. 9029(b). Its constraint is heightened considering the government's advantages of an extended claims bar date and more favorable extension opportunity. It would be unfair to nongovernmental creditors, who have a less advantageous deadline, to indulge the government's request against the clear direction of the bankruptcy rules.

## II.    Administrative expense bar date

The United States also requests tolling and extension of any deadlines for filing administrative expense claims. Again, the blanket motion does not reference any rules, code

---

1 Nongovernmental creditors, however, can file a motion to extend the deadline before or after its expiration. Fed.R.Bankr.Pro. 3002(c)(6).

sections or specific cases, rendering relief unnecessary in all cases.

The bankruptcy code provides "an entity may timely file a request for payment of administrative expense, or may tardily file such request if permitted by the court for cause." 11 U.S.C. § 503(a). Although legislative history suggests the bankruptcy rules will establish "the time, the form and the method" for filing administrative expense requests, the rules fail to set forth any such particulars. In re Hirsch, 550 B.R. 126, 146 (Bankr. W.D. Mich. 2016) (citations omitted).

Frequently, an administrative claims bar date will be set through the terms of a plan, confirmation, or other court order. Filing within this time frame will render the request timely. Outside of that, the government needs to establish cause. The applicant must prove cause by a preponderance of the evidence. In re Cripps, 549 B.R. 836, 858 (Bankr. W.D. Mich. 2016) (citing Tippins Bank and Tr. v. Jarriel (In re Jarriel), 518 B.R. 140, 145 (Bankr. S.D. Ga. 2014)). Courts look at all relevant factors, including

> (i) the prejudice to the party requesting the administrative expense, (ii) the prejudice to other parties in interest, most notably the debtor, (iii) the cause of the delay, (iv) the length of the delay, (v) the reason for the delay and whether the movant acted in good faith.

Cripps, 549 B.R. 836, 858 (citing Pioneer Invest. Servs. Co. v. Brunswick Assocs. Ltd P'ship, 507 U.S. 380, 382-83 (1993)). Granting the government's motion outright sidesteps consideration of the other interests involved in a particular case, as well as eliminates the government's burden of proof. The government may ably demonstrate cause based on the shutdown but the court is not willing to issue a blank ex parte check and potentially prejudice other parties.

### III.    Equitable tolling

Although the United States does not use the term, the request is for the court to equitably toll the deadlines during the shutdown period. To succeed, the government needs to demonstrate

> (1) lack of actual notice of the filing requirements;
> (2) lack of constructive knowledge of the filing require-
> ment; (3) diligence in pursuing one's rights; (4) absence
> of prejudice to the defendant; and (5) a plaintiff's reason-
> ableness in remaining ignorant of the notice requirement.

Nardei v. Maughan (In re Maughan), 340 F.3d 337, 344 (6th Cir. 2003) (citing Andrews v. Orr, 851 F.2d 146, 151 (6th Cir. 1988)).

Once again, the court is not willing to accept the government's position outright in all

3

cases. In most of the situations covered by the motion, the government had actual notice of the deadline. Granting the motion outright eliminates the need for the United States to carry its burden of proof to prevail on an equitable tolling claim and could potentially prejudice other parties.

### IV. Lack of Congressional action

The government has shut down twenty-one times since 1976. See Gretchen Frazee & Lisa Desjardins, How the Government Shutdown Compared to Every Other One Since 1976, PBS: News Hour (Jan. 25, 2019, 4:49 p.m.) https://www.pbs.org/newshour/politics/every-government-shutdown-from-1976-to-now (February 4, 2019). The shut downs have lasted from nine hours (Feb. 9, 2018) to 35 days (December 22, 2018). Yet in the span of forty-two (42) years, and over one hundred sixty-four (164) days closed, Congress has never acted to alter the deadlines the government faces during a shutdown. No legislation to lessen the impact of a shutdown has materialized. This is a matter for Congress and/or the President to address, not the judiciary.

### V. Other legal authority

The United States has had both success and failure with similar motions related to the most recent and other government shutdowns. After full consideration of multiple decisions, the court is convinced reliance on cases that disfavor the United States' request for relief are more sound.

Courts cite numerous grounds for denying relief to the government. There are cases that find the exceptions for human life and the protection of property in the Antideficiency Act mandate continuation and therefore decline to impose a stay or toll deadlines. See, e.g., In re U.S. v. US Airways Grp., Inc., 979 F.Supp.2d 33 (D.D.C. 2013) (pressing airway merger upon which a bankruptcy case hinged); Kornitzky Grp., LLC v. Elwell, Case No. 18-1160 (D.C. Cir. 2019). Bankruptcy cases frequently involve the protection of a debtor's property from the reach of creditors, such as cessation of foreclosure actions and wage garnishments, and sometimes the protection of human life, such as cases involving a nursing home, a hospital, or a family whose utilities have been shut off.

Pressing deadlines also convince courts that moratoriums on action are inappropriate. For example, the US Airways Grp. court cited the need to complete the merger within a month. US Airways Grp., supra, at 35. In other cases, a court's review of a rule or regulation that is to become effective in a short time period necessitated immediate consideration. See, e.g., New York v. U.S. Dep't of Labor, Case No. 18-1747 (D.D.C. Dec. 28, 2018); California v. Azar, Case No. 17-5783 (N.D. Cal. Dec. 26, 2018). While claims bar deadlines are less ponderous, bankruptcy cases cannot be held in limbo indefinitely. Other constituencies are involved that may be impacted by stays, abeyances and tolling. For example, a stay may hold up confirmation of a plan, possibly requiring a trustee to withhold payment on claims.

In US Airways, the court noted the employees' interest in a timely resolution of the

matter.  Expeditious adjudication results in certainty for all parties involved.  Other courts recognize the inherent unfairness in permitting one party experiencing a hardship to impede the progress of the matter.  In U.S. v. Baltimore Police Dep't, the court denied an agreed motion to continue the case, observing that "Federal Government's attorneys . . . are required to find the means by which to continue their participation in this litigation on a timely basis regardless of their client's internal issues."  Case No. 17-0099 (D. Md. Dec. 26, 2018).  The court cannot stop its docket because one party is facing a hardship.  Solo practitioners get sick, law firms disband, and clients, both individuals and entities, lead complicated existences.  Problems abound yet the work must continue.

Several courts also noted that the Department of Justice has a contingency plan in place that provides for attorneys to continue to work when a court denies a motion to stay/continue/abey. See, e.g., Kornitzky Grp., supra; New York v. U.S. Dep't of Labor, supra; O.A. v. Trump, Case No. 18-2718 (D.D.C. Dec. 27, 2018).  Kornitzky referenced the 2013 shut down, when the court denied all sixteen requests for a stay, and the United States thereafter participated in every case.  With the contingency plan, there is no need to see if the government will take a mile if given an inch.

Moreover, the court has an obligation to continue providing services.  As one judge declared, shutdowns are nothing new, he had experienced four in his tenure. Colon-Morciglio v. U.S., Case No. 17-2312 (D.P.R. Jan. 2, 2019).  As a public servant, it is the court's responsibility to fulfill its obligation even in less than optimal circumstances.

At least one court found that a government shutdown did not relieve the government of its legal obligations.  Martin v. U.S., 130 Fed.Cl. 578 (Fed. Cl. 2017).  The case involved excepted federal workers who worked during the 2013 shutdown without receiving their regular pay.  They brought a Fair Labor Standards Act ("FLSA") claim against the government and won.  Although the court acknowledged the conflict between the Antideficiency Act, prohibiting the government from paying employees, and the FLSA, which requires the government to pay employees, the court concluded that "[t]he mere failure of Congress to appropriate funds . . . does not in and of itself defeat a Government obligation created by statute." Id. at 583 (citing New York Airways, Inc. v. U.S., 177 Ct.Cl. 800, 810 (1966)).  A lack of appropriations does not excuse every breach.

The matters on which the United States seeks broad general action are generally ones with specific provisions in the Bankruptcy Code (11 U.S.C. § 101 et seq.) and Rules.  The court is not free to ignore these binding points of law.  In re Trick Tech., Inc., 2013 WL 3865592, * 4 (Bankr. D. Colo. 2013) (stating "an appeal to equity cannot cause this Court to ignore applicable Bankruptcy Code and Tenth Circuit precedent . . ."); In re Affirmative Equities Co. L.P., 2015 WL 1058829, * 3 (Bankr. S.D.N.Y. 2015) (opining "although equity may dictate a different result, the Court cannot ignore the unambiguous language of the Bankruptcy Code.") (citation omitted).

Finally, the action sought is most curious in this specific branch of the federal courts.  Debtors are in bankruptcy court because they don't have enough money.  They frequently don't

have the budget for attorneys and, as a result, frequently cannot protest actions against them. The federal government's problem is that it did not have a budget for attorneys. If the same principle sought here was to be applied to debtors (we'll wait until you have the budget), the work of the court would grind to a halt. In this court, more than any other, the work continues in the absence of money due to the very nature of the court.

For these reasons, the court hereby **DENIES** the United States' motion. The United States may seek relief on a more individualized basis in specific cases.

#   #   #

**Service List:**

United States Attorney for the Northern District of Ohio
801 W Superior Avenue Suite 400
Cleveland, OH 44113-1852